## LIVINGSTON *vs.* KETCHAM.

Common of estovers cannot be divided, or apportioned. The reason is, that it would necessarily lead to surcharging the land from which they are taken.

Where the entire right to common of estovers devolves upon several persons, *by operation of law*, although they cannot enjoy it in severalty, nor either of them alone, *it seems* they may unite, and convey it to one person, who would thereby acquire a vested title.

But when it is once severed, by the act of the party, it is extinguished, and gone forever.

Where land, to which common of estovers is appurtenant, is partitioned by the act of the tenants, without any express stipulation as to the right to estovers, the right is extinguished, as to both tenants.

The separate occupation of distinct portions of such land, by the tenants, for a great number of years, is sufficient to raise the presumption of a division of the land between them, and of an apportionment of the right of common.

THIS was an action of trespass for cutting timber and trees on the plaintiff's premises, in the town of Dover, Dutchess. county. The defendant pleaded the general issue, and gave notice that he had a right to cut wood and timber on the premises in question, by virtue of a lease executed by the father or ancestor of the plaintiff, to one John Wheeler, which had been assigned to the defendant and one Shadrach Sherman. The cause was tried at the Dutchess circuit, in 1847, before BARCU- LO, late circuit judge. The plaintiff proved the cutting of the

Livingston *v.* Ketcham.

wood and timber by the defendants. The defendant introduced
a perpetual lease of about 100 acres, from Robert Livingston
to John Wheeler, dated in 1772, reserving rents, and conferring
upon the lessee the right to cut fire wood and fencing timber
upon the lessor's wood lots, so long as it grew, and the land
was wild and uncultivated. It was proved that, in 1790, Mar-
garet Livingston, the widow of the lessor, and who owned the
land in her own right, conveyed the farm previously leased to
Wheeler, as well as the wood lots, to John R. Livingston, the
plaintiff. John Wheeler died, leaving a son, Alburtis Wheeler,
who occupied the farm 50 years ago, and was in possession 25
years. On the 23d of December, 1808, Alburtis Wheeler and
wife executed an assignment of the lease given to his father, to
Ketcham, the defendant, and Shadrach Sherman. On the
11th of March, 1809, the plaintiff, by deed, conveyed to John
B. Wheeler the fee of the land above mentioned, and also the
fee of another farm, formerly leased to said John B. Wheeler,
containing, in all, about 200 acres; subject to the leases above
mentioned. On the 21st of October, 1816, John B. Wheeler
sold and conveyed to the defendant Ketcham about 54 acres
of the farm held by Ketcham under the lease; being the north
part thereof; and on the same day Wheeler executed another
deed to Ketcham, conveying about 60 acres of land in fee; be-
ing the John B. Wheeler farm, the same lands now occupied
by the defendants. Both these deeds expressly stated that the
conveyances were subject to the estate and interest which the
grantee then had, in the premises conveyed. The circuit judge
charged the jury that there was no evidence of any apportion-
ment of the Alburtis Wheeler farm, and that the right on the
part of the defendant to common of estovers, without such ap-
portionment, was good, notwithstanding his purchase of the fee
of a part of the said Alburtis Wheeler farm; and that the de-
fendant must have a verdict. The plaintiff's counsel excepted
to this charge, and requested the circuit judge to charge
(1.) That by the defendant's own act in purchasing the fee of
a part of the farm, he extinguished his lease and tenancy; in-
asmuch as he had only a right in common with Sherman, and

not the whole right, under the assigned lease. (2.) That the assignment of the lease to Ketcham and Sherman operated as an extinguishment of the right of common in the plaintiff's land. (3.) That common of estovers not being apportioned, and Ketcham having a lease of only one-half of the Alburtis Wheeler farm, neither he, nor Sherman, could claim the right of cutting. (4.) That the right in the defendant to cut, if any, was incident to the tenancy, and that when the tenancy ceased, in Ketcham, the right was gone. (5.) That the plaintiff was entitled to a verdict, if the jury were satisfied that the defendant had cut wood on the plaintiff's land. The judge refused to charge in this manner ; and the jury found a verdict for the defendant. The plaintiff now moved for a new trial.

*A. L. Pinney & John Thompson,* for the plaintiff. 1. The purchase, by John B. Wheeler, of the *fee* of both farms, operated, (1.) As a merger of his own lease. (2.) To make him *landlord* to Ketcham, &c., so that he stood in the same relation to him, as Livingston did formerly to J. B. Wheeler. (23 *Com. Law R.* 147. 2 *Cowen,* 284, 830. 1 *Wend.* 478. 2 *B. C.* 177.) 2. By Ketcham's purchasing the fee of the north part of the Alburtis Wheeler farm, which is all he ever occupied, as is proved, (Sherman having a lease of and occupying the south part,) his lease was merged in the fee, and the right of cutting, &c. was gone. (10 *Wend.* 639. 2 *Hilliard's Ab.* 110, *and references.* 11 *John.* 495.) 3. By Ketcham's occupying the north part of the farm, and purchasing the fee of it, and Sherman occupying the south part for so great a period, the law presumes a division or apportionment between Ketcham and Sherman, consistently with their respective occupations of the leasehold estate ; and apportionment extinguishes common. (2 *Wend.* 60. 10 *Id.* 639. 11 *John.* 495. 6 *Cowen,* 632.) The occupancy in severalty was per se an apportionment, and so was the taking a deed, by the defendant, of 54 acres, the north half of the farm. 4. Extinguishment results equally from Ketcham's owning and occupying the north half, under a lease to him and Sherman jointly. 5. If Ketcham owns the

whole of the Alburtis Wheeler farm, (which the conveyance shows he does not,) then there was a merger as to him of the lease when the fee was purchased. (16 *John.* 14. *Preston on Merger*, 100, 202, 205.)   6. Livingston's conveyance to J. B. Wheeler was subject to the terms of the lease.   It conveyed no right to Wheeler in the wood lots; but only the farm.   7. The right to cut was incident to the tenancy, and when Ketcham ceased to be tenant and to pay rent, his right of estovers was gone; as he could have it only by keeping alive the lease.   (11 *John.* 495.)   8. The question of apportionment was for the jury. (1 *Phil. Ev.* 165. 6. *Wend.* 228. 2 *Id.* 60, 61.)   9. If Ketcham's tenancy, or estate as tenant, was merged, then all incidents and qualities annexed will be extinguished.  (*Preston on Merger*, 24, 49, 100.)   10. Ketcham, in any light, was, under his lease, a tenant in common with Sherman, and had a conditional fee, and when he acquired the fee simple in any portion of the same lands, there was a merger to the extent of the two estates in him, whether for the whole or a part.   The right to cut was gone, (1.) By apportionment.   (2.) By merger.

*L. Maison*, for the defendant.   1. There is no evidence that the plaintiff is the owner of the lands upon which the trespass is alleged to have been committed.   2. If the plaintiff be the owner, he cannot maintain trespass against the defendant for any wood or timber which may have been cut on lot No. 6 ; that lot being in the possession of Doty in virtue of a lease.   (1 *R. S.* 741, § 8.)   3. There was no surrender of the lease, neither by writing nor by operation of law.   (2 *R. S.* 135, § 6.   12 *John.* 361.   3 *Bac. Abr. Leases*, 8.   1 *Saund. Rep.* 235, c, n. 9. *Co. Litt.* 337, a, n. 2, 338, n. 2.   6 *Wend.* 580, 581.   *Shep. Touch.* 300, 301, 303, 306.   2 *Wend.* 491.   18 *John.* 184.   16 *Id.* 28, 29.   6 *Wend.* 569, 579, 581.)   4. There was no extinguishment of the common.   (4 *Cruise's Dig.* 114, § 73, *tit.* 23. *Id.* 116, § 8, *tit.* 23.   *Cro. Eliz.* 570.   16 *John.* 27.)   5. There can be no rent reserved out of a common appurtenant.  (*Cruise's Dig. tit.* 28, *ch.* 1, *Rents*, § 18 *to* 25.   2 *Bl. Com.* 41.   7 *T. R.* 651.   *Cruise's Dig. tit.* 23, *Common*, § 88.)   6. The right of

common is joint in Ketcham and Sherman. To extinguish the right, the joint act of both is necessary. There has been no apportionment of the estovers between them. 7. Ketcham's tenancy of the whole of the Alburtis Wheeler farm has not ceased. He is yet liable for the rent of that portion which has not been purchased by Ketcham of John B. Wheeler. 8. The exercise by Ketcham of the right to cut on these lots, uninterruptedly, for thirty-five years or more, (since 1808, the date of the assignment of the lease to Ketcham and Sherman,) with the knowledge of the plaintiff or his agent, and an acquiescence therein, is such a concession of the defendant's right that the plaintiff cannot now disturb it. (1 *Phil. Ev. notes* 308, 354. 1 *John. Ch.* 357.)

STRONG, P. J. The lease from Robert Livingston to John Wheeler, dated on the 9th of March, 1772, conveyed to the lessee, his heirs and assigns, a right to cut fire wood, fencing stuff and timber, for the use of the demised premises, from the waste and unimproved wood lots of the lessor, whilst they should continue in that state. Alburtis Wheeler, the son of the lessee, succeeded to his right in such premises, and on the 23d of December, 1808, assigned the lease to the defendant and one Shadrach Sherman. The defendant took possession of the north part, Sherman of the south part, and one Ensign of about twelve acres in the middle, of the leasehold premises; and they now occupy such parts in severalty. How long they have so occupied them does not appear, but it is in evidence that the defendant has alone possessed the north part for upwards of 35 years. During the greater part of that period he has cut wood, fencing stuff and timber, for the use of the land occupied by him, from the waste and unimproved wood lots of the landlord, the title to which has in the meantime passed from the lessor, through his widow, to the plaintiff.

The defendant's right to cut the wood in question, notwithstanding his exercise of it for so long a period, must depend upon the lease to John Wheeler; as he has uniformly claimed under that instrument. That precludes him from claiming, by

Livingston *v.* Ketcham.

prescription, estovers for the land actually occupied by him. Prescription raises the presumption of a grant only where none is expressly proved. The principal, and in my opinion the controlling question, in the case, is whether the claim now presented by the defendant can be supported by the original grant.

It seems to be well settled that common of estovers cannot be divided or apportioned. The reason given is, that it would necessarily lead to surcharging the land from which they are taken. More fuel, fences and buildings would be requisite for a number of tenants than for one. It is not necessary to inquire, at this late day, whether the quantity necessary for one tenant could not have been reasonably ascertained, and that divided among the several new tenants, agreeably to the extent or value of their respective parts of the land. It is sufficient, for the present, to say that the rule which I have mentioned has been settled. Lord Coke says that the right to take estovers is so entire that it cannot be divided, even between coparceners. (*Co. Lit.* 164, *b.*) It appears by the books that in such case the eldest shall have them and the others, a contribution; or if no other property descended, from which contribution could be had, then the parceners should have the alternate enjoyment. It seems to be settled that, when the entire right devolves upon several *by operation of law,* although they cannot enjoy it in severalty, nor either of them alone, they may yet unite and convey it to one; who would thereby acquire a vested title. But when it is once severed by the act of the party, it is extinguished and gone forever. The question in this case is whether the right to take the estovers has not been severed by the act of the party.

The defendant confessedly occupies but a part of the demised premises. He claimed in his notice subjoined to his plea that *he* had a right to cut the wood and timber under the lease. He does not claim under a joint right in his co-assignee Sherman and himself. Had they occupied the whole jointly, and he had justified under a joint claim, then the question might have been raised whether an assignment, in terms, of the right by one to several would, per se, have annihilated it. In that

case it might well be doubted whether the same reason—the danger of surcharging the common—could not be urged against the continuance of the right as well under such circumstances as in the case of tenants holding in severalty, although not to the same extent. There would be a necessity, certainly, for more fire wood, and probably for more fencing stuff and building timber. However, it was not necessary to decide that point on the trial of this cause. It could, and I think should, have been put on another ground. There was strong, if not conclusive, evidence to prove that there had been a partition of the demised premises between the defendant and Shadrach Sherman, under the assignment of the original lease to them. Such partition would have been valid and have created separate interests in the parties, although made by parol.

There is no evidence to show that the right to take estovers was in any manner granted or conveyed to the defendant to be exercised by him solely. On the contrary, the presumption from the facts proved is the other way. It was incumbent upon the defendant to remove such presumption by positive proof; more especially as nothing is to be presumed in favor of the claim to take estovers. If there has been a partition of the premises without any express stipulation as to such claim, that of course extinguished the right to take the estovers in question, and the defendant was a trespasser. In my humble opinion the learned judge should so have instructed the jury. The intimation which he gave, and his refusal to charge on this point as requested by the plaintiff's counsel, doubtless led them to a different conclusion.

There should be a new trial, costs to abide the event of the suit.

Morse, J. concurred.

New trial granted.